## People of the State of Illinois, Defendant in Error, v. Paul Bush, alias, et al., Plaintiffs in Error.

### Gen. No. 14,424.

1. BILLS OF PARTICULARS—*when refusal to grant additional, in criminal case, not ground for reversal.* A motion for an additional bill of particulars in a criminal case is addressed to the sound discretion of the presiding judge and unless the Appellate Court is able to say that the denial of the motion was an abuse of judicial discretion and that such denial operated to the injury of the defendants, the ruling of the trial judge will not be disturbed.

2. BILLS OF PARTICULARS—*when proof not limited by.* If a bill of particulars is only asked and given as to one count of an indictment the permitting of evidence under the other counts of such indictment is proper.

3. FALSE PRETENSES—*what evidence not essential to conviction for obtaining money by. Held,* in this case, that it was not necessary to the conviction had for obtaining money by false pretenses that the worthlessness of the stock foisted upon the complaining witness be established; also that the admission of the ineffectual efforts of the complaining witness to sell such stock was not error.

4. INDICTMENT—*when sufficiently charges conspiracy.* An indictment is sufficient which charges a conspiracy to perpetrate a confidence game, the confidence game being a felony.

5. INSTRUCTIONS—*when upon conspiracy not erroneous. Held,* that an instruction upon the subject of the joint criminality of conspirators was not erroneous which contained the following language: "All who with knowledge of the facts concur in the plans originally formed and aid in executing them."

6. INSTRUCTIONS—*when failure to refer to limitation period not erroneous.* In a criminal case, if the statute has not run against the offense, the failure of an instruction to refer to the period of limitation is not error which will reverse.

Prosecution for obtaining money by false pretenses. Error to the Criminal Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed June 8, 1909.

JAMES T. BRADY, E. J. RABER and DARROW, MASTERS & WILSON, for plaintiffs in error.

JOHN J. HEALY and J. E. NORTHUP, for defendants in error.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Plaintiffs in error were jointly indicted with one Alex W. Maas, alias Smith, for conspiring together to obtain money by false pretenses from the prosecuting witness, Frank L. Susemihl, and were convicted by the verdict of the jury, who fixed their punishment at imprisonment in the penitentiary for an indeterminate term and a fine of $1,000 each. Judgment was rendered upon this verdict, in an attempt to reverse which this writ of error has been sued out, and the record is before us for review.

It is assigned for error and urged in argument that errors are apparent in the following particulars: In refusing to compel the State to furnish an additional bill of particulars; in refusing to instruct the jury to find a verdict of not guilty under the first count, because the bill of particulars supported only the second count and in effect eliminated it from the case; in not instructing a verdict of acquittal as to the second count, it being void for repugnancy; that the verdict is not sustained by the evidence; and errors of the court in its rulings upon the evidence, and in erroneously giving to the jury instructions 13 and 15.

The indictment contains two counts, by the first of which the defendants, and Maas, who failed of apprehension, were charged with conspiring to obtain money from the prosecuting witness by means of false pretenses, contrary to law; and by the second, that they, with the fraudulent intent to wrongfully, etc., do an illegal act, then and there injurious to the public trade, did conspire, confederate and agree together to obtain money and property from the prosecuting witness by means of the confidence game, contrary to the statute.

The motion for a bill of particulars in terms restricted information as to matters intended to be proven under the second count of the indictment, which related to charging defendants with practicing the confidence game. Such a bill was furnished by

the State within the terms of this request. The State prosecutor evidently understood the motion as restricted to the second count of the indictment, and such is the interpretation we put upon it. Defendants therefore received all they asked for. Complaint is made of the refusal of the court to grant defendants' motion for an additional bill of particulars. Such a motion is addressed to the sound discretion of the presiding judge, and unless we are able to say that the denial of the motion was an abuse of judicial discretion and that such denial operated to the injury of the defendants, we are not at liberty to disturb the ruling of the court. DuBois v. People, 200 Ill. 157; C. & A. R. Co. v. Smith, 10 Ill. App. 359. Moreover, by express provision of the statute an indictment is sufficient which charges what is termed the ''confidence game'' in the language of the statute. Sec. 99, chap. 38, title Criminal Code, R. S. An examination of the second count satisfies us that it sufficiently conforms to this statutory requirement.

The argument advanced supporting the contention that the court should have instructed a verdict for defendants under the first count, rests upon the alleged ground that the State was limited in its proof to the matters contained in its bill of particulars, which related solely to the crime charged in the second count of the indictment—the conspiracy to obtain money by means of the confidence game. The difficulty with such contention is, as we have already indicated, that no bill of particulars or specification of matters relied upon for a conviction under the first count was asked, but such motion was confined to matters relied upon by the State to support the offense charged in the second count of the indictment. Submitting the case to the jury on both counts was no lapse from legal precedent, nor was the failure to instruct the jury to find defendants not guilty under the second count. The first count charged a conspiracy at common law, and is clearly distinguishable from the case of McDonald v. People, 126 Ill. 150, because in the McDonald

case the bill of particulars by order of the court was made to include every count of the indictment; while in the case at bar it applied only to the second count.

Under these conditions the bill of particulars in the case at bar did not affect in the slightest degree the first count of the indictment, nor circumscribe in any way the right of the State to make such proof under it as it might be able to produce.

A careful examination of the evidence discloses a condition fairly bristling with false and deceitful representations in which both the defendants were actual participants. They evidently went out to secure, by false representations and the exercise of much cunning and ingenuity, the money of the prosecuting witness, which they learned from his advertisement he possessed. In this they, by their alluring artifices, succeeded in doing by a scheme which was false and deceptive in every move. Poindexter in an attempt to bring the prosecuting witness to an early decision to part with his money for the worthless stock, under a false pretense that Bush would buy it at a largely increased price, pleaded that he was pressed for money, whereupon the prosecuting witness offered some money to Poindexter to relieve his present financial embarrassment. This Poindexter refused, saying in effect he didn't want personal assistance; he wanted the prosecuting witness to feel that he was not risking a single penny of his money; he wanted *his confidence*, and, as the denouement showed, he succeeded in getting both. The false representations were as to matters existing—not to occur in the future. That Bush stood ready to buy the stock when in fact he had no such intention at any time, was a false statement which led the prosecuting witness to part with his money and, in so doing, to be swindled out of it. Again, it is said there was no evidence that the stock was worthless, and that the evidence of the prosecuting witness as to his effort to sell it and his inability to do so was inadmissible. Be that as it may, we do not think the

admission of this testimony had any harmful or prejudicial effect in establishing the guilt of defendants. If the stock was worthless and the corporation fictitious, it might be impossible to so prove, and we think, in view of all the circumstances, it was unnecessary to do so. Every material representation in faith of which the prosecuting witness was fleeced of his money was absolutely false. Even the names of the conspirators were assumed, as the proof abundantly shows. There was not a truthful statement made by the defendants on any material point during the whole of the negotiations of defendants with the prosecuting witness. Relying upon the truthfulness of these false pretenses, he parted with his money. In so doing he lost his money. We do not think that it was necessary for the state to proceed any farther in its proof on this point. The law does not exact proof of a negative fact, which in most cases would be impossible. The conspiracy to obtain money by false pretenses did not require proof of the value of the article delivered in consummation of the conspiracy at the time the money was obtained from the victim of the confidence game played upon him. It occurs to us, however, that the fact that the person victimized made efforts to sell the stock which were fruitless, together with proof of the falsity of every pretense made which induced such person to part with his money, regardless of the methods used in an attempt to effect a sale, made at least a sufficient *prima facie* case against defendants to sustain a conviction and to cast upon them the burden of exculpating themselves by competent evidence from the charge which such proof condemned them as being guilty of.

The second count in substance charges a felony, in that it avers the defendants to have been guilty of working a confidence game upon, and thereby procuring from, the prosecuting witness a large sum of money. It is not repugnant in any of its parts. It is unlike Maloney v. The People, 229 Ill. 593. It charges

the practice of the confidence game, which is a felony. In the Maloney case the indictment charged a conspiracy to extort money on the threat to charge another with a crime known as "the infamous crime against nature, then and there injurious to public morals." It is plain that the attempt to extort money by threats to charge a person with the infamous crime against nature, has nothing whatever to do with the crime threatened to be charged on failure to accede to the extortionate demand for money made. It did not involve public morals, but it did involve the administration of public justice. The words used were in the Maloney case necessary to characterize the act charged, and consequently could not be rejected as surplusage, and as the offense charged was an attempt to extort money, and not being *contra bonos mores*, but contrary to the administration of public justice, rendered the indictment void for repugnancy. But such reasoning has no application to an indictment for felony. The statement in the second count laid under *vidclicet* refers solely to the value of the property obtained by means of the confidence game charged in that count as the means to the accomplishment of the offense. As said in the Maloney case, "The rule on this subject is, that if the statement laid under the *vidclicet* is material and enters into the substance of the description of the offense, and is impossible or inconsistent with the premises, then the indictment is void." The words "contrary to public trade" have no influence in charging the quality of the offense, and as the offense charged is a felony, such words may be disregarded as surplusage. No better interpretation can be found, more in keeping with this conclusion, than these words of the court in the Maloney case: "An indictment charging a conspiracy to do an illegal act, which in its nature could not be injurious to public trade, health, morals, police or the administration of public justice and not to commit a felony, would not be a conspiracy under our statute."

This case comes clearly within the exception of the rule announced in the words quoted—"not to commit a felony."

We do not think the jury were misled as to the law announced in instructions 13 and 15 complained about. We must accord to the language used in instruction 15 its ordinary and usual interpretation in the connection in which it appears. "All who with knowledge of the facts concur in the plans originally formed and aid in executing them," cannot be understood by intelligent minds as referring to the concurrence of an innocent person. How could any man with full knowledge of antecedent facts, presumptively concurred in by aiding in executing them, be innocent of the criminality of the acts in which he participated? In the condition of this evidence such facts would be conclusive. All the facts in this record point to but one conclusion, viz: a conspiracy to obtain money by false pretenses and the using of the methods of the confidence game in luring the victim to part with his money. No one with knowledge of the facts and participating in their execution, could be deceived as to the criminality of the whole scheme. The defendants proffered no defense on the merits and produced no witness to contradict the case made by the state's proof. In the light of the state's proof, it is hardly conceivable that the jury would have been misled by that instruction to convict either of the defendants, for the reason that they had knowledge of the facts, but that there was an absence of guilty intent. This instruction states the law of conspiracy correctly and is in the form which accords with the uniform holdings of our courts on that subject. Sec. 93 Greenleaf on Ev., vol. 3; Spies v. People, 122 Ill. 1, 170.

Instruction 13 is sufficient, though it might have been more clear if the period of the statute of limitations had been stated, instead of leaving it to be inferred by the jury. However erroneous it might be, still in view of the fact that from the time of the

committing of the crime until the date of the trial less than six months intervened, it could not have prejudiced the defendants in the slightest, for if the conviction followed on the belief of the jury that the statute had not run against the offense at the time of the finding of the indictment, they were right, and if they found the verdict in ignorance of the statutory limit of time, no harm has been done. It was at most but the statement of an abstract proposition of law, which it is well not to give, but not error to do so.

We find no error in the record calling for a reversal of the judgment of the Criminal Court, and it is affirmed.

*Affirmed.*