(No. 32627.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* MEYER DORMAN *et al.*, Defendants in Error.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

LATHAM CASTLE, Attorney General, and GEORGE P. COUTRAKON, State's Attorney, both of Springfield, (JOHN L. DAVIDSON, JR., MARK O. ROBERTS, ROBERT B. OXTOBY,

RAYMOND L. TERRELL, FRED G. LEACH, and HARRY L. PATE, of counsel,) for the People.

LONDRIGAN & LONDRIGAN, (PREE & PREE, and ROBERT WEINER, of counsel,) all of Springfield, for defendants in error.

Mr. JUSTICE FULTON delivered the opinion of the court:

The People seek review of an order of the Appellate Court, Third District, entered in the above entitled cause on writ of error to the circuit court of Sangamon County pursuant to the provisions of section 17 of division XIII of the Criminal Code. Ill. Rev. Stat. 1951, chap. 38, par. 747.

The defendants in error, five in number, were indicted by the grand jury of Sangamon County, in an indictment returned in the circuit court of said county, containing two counts. The first count charges the operation of a "book" upon certain premises in the city of Springfield, in violation of an act to prohibit book-making and pool-selling. (Ill. Rev. Stat. 1949, chap. 38, par. 336.) In the second count the defendants in error were in substance charged with the common-law and statutory crime of conspiracy to do an act injurious to public morals, *viz*: by keeping a room with a book for the purpose of registering bets upon a horse race, based on the provisions of section 46 of division I of the Criminal Code. (Ill. Rev. Stat. 1949, chap. 38, par. 139.) Each of the defendants, after arrest, moved to quash the indictment. The circuit court upon a hearing allowed the motion to quash as to count II and denied the motion as to count I. A writ of error was prosecuted by plaintiff in error to the Appellate Court, Third District, where the judgment of the trial court was affirmed. The present writ of error has been sued out to secure a review of the judgment of the Appellate Court, reported in 347 Ill. App. 317.

The second count specifically charges the defendants in error with conspiring "to do an illegal act injurious to the public morals, police and administration of public justice, to-wit: to wilfully and wrongfully keep a certain room in the rear of the premises then and there known as 127 North Fifth Street, within the City of Springfield, County of Sangamon and State of Illinois, with a certain book and instrument known as a book, said book then and there being kept for the purposes of registering bets and wagers upon the result and test of speed of a beast, to-wit: a horse, contrary to the law, and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the same people of the State of Illinois."

The act to prohibit book-making (par. 336,) provides that the keeping of a "book" or "handbook" is a misdemeanor and punishable by a fine up to $2000, and imprisonment in the county jail for a period of not to exceed one year.

Section 46 of division I of the Criminal Code provides that any person who shall conspire to do an illegal act injurious to the public health or morals shall be fined not exceeding $2000 or shall be imprisoned in the county jail not exceeding one year, or shall be imprisoned in the penitentiary for a term of not less than one year and not exceeding five years. The conspiracy statute was adopted in the year 1874, and was amended in 1947.

Section 46 specifically enumerates certain crimes in which two or more persons may be indicted for conspiracy and in addition uses the following language, "or to do any illegal act injurious to the public trade, health, morals, police or administration of public justice."

The gist of the present indictment is that of keeping a book for the purpose of registering bets. The plaintiff in error does not contend that either by statute or common law can it be assumed that a bookmaking conspiracy is

prohibited by specific language, but submits that upon an exhaustive historical review of statutory and text law, brought down to the present day, such general terms as "injurious to public morals" and "illegal" should be read as including such prohibition. It is hard to find precedent for such assumption.

The defendants in error urge that said section 46 is void for vagueness and uncertainty. They contend that although the conspiracy statute has been in effect since 1874, the present indictment is the first attempt to apply it to the act of keeping a book for registering bets on horse races. They are not charged here with that offense but are charged with conspiring to do an illegal act injurious to public morals, carrying a possible penalty and sentence of as much as five years' imprisonment in the penitentiary.

The situation in this case causes some concern because of the fact that under the statute against book-making, an offender, for keeping a room for the purpose of bookmaking, may be punished by fine and imprisonment in the county jail not to exceed one year; whereas, for the same offense, under the conspiracy section he may be charged with conspiring to injure the public morals and his punishment may be as much as five years in the penitentiary.

In the case of *Maloney* v. *People,* 229 Ill. 593, we stated that, "An indictment charging a conspiracy to do an illegal act which in its nature could not be injurious to public trade, health, morals, police or the administration of public justice, and not to commit any felony, would not be a conspiracy under our statute. * * * If defendant in error's position is sustained, then any illegal act which is prohibited by the statute may become, when two or more persons are charged together, the subject of an indictment for conspiracy and subject the offender to imprisonment in the penitentiary, or a fine of $2000, or both."

The clear intention of the statute is not disclosed, but the legislature could not well intend that a charge which

may be punished by a five-year sentence in the penitentiary should be applied to a conspiracy to keep books for registering bets on horse races when, in the same act, (par. 336,) it is provided that provisions of the act do not apply to the actual enclosure of fair or race track associations where the races are run.

In the Appellate Court opinion, 347 Ill. App. 317, the court commented upon the case of *City of Chicago* v. *Ross,* 257 Ill. 76, which dealt with an ordinance of the city of Chicago, seeking to suppress gambling houses, lotteries and all fraudulent devices and practices, where it was stated that the words "all fraudulent devices and practices" must be held to refer to the devices and schemes which involve an element of chance and which are similar to the things designated by the particular words found in the statute, that is gaming, gambling houses and lotteries. In the *Ross case* this court further said, "It has been repeatedly held by this and other courts that where general words follow particular and specific words in a statute, the general words must be construed to include only things of the same kind as those indicated by the particular and specific words; [citing *Shirk* v. *People,* 121 Ill. 61, and other Illinois cases] and this rule is enforced in the construction of a statute unless there is something in the statute or its context which shows that the doctrine of *ejusdem generis* should not be applied."

We hold that the legislature did not intend the conspiracy statute to include bookmaking. Neither does there appear to be any authority to support a finding that conspiracy to keep a book was an indictable offense at common law. In *People* v. *Monroe,* 349 Ill. 270, it is stated that "betting on horses races is not *malum in se* but is only *malum prohibitum.*"

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*